IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VIEQUES CONSERVATION AND HISTORICAL TRUST, INC., et al., <br><br> **Plaintiffs** <br><br> v. <br><br> MEL MARTINEZ, Secretary, U.S. Department of Housing and Urban Development, et al., <br><br> **Defendants** | **CIVIL NO.** 97-2905(JAG) <br> **CIVIL NO.** 98-2017(JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 24, 1997, plaintiffs, the Vieques Conservation and Historical Trust ("the Trust") and Carlos Ventura ("Ventura"), filed this action for declaratory and injunctive relief under the Endangered Species Act ("ESA"), the Federal Water Pollution Control Act ("FWCA"), and the National Environmental Policy Act ("NEPA"). (Docket No. 1). The named defendants are: Mel Martínez, in his official capacity as Secretary, U.S. Department of Housing and Urban Development ("HUD"); Gail Norton, in her official capacity as Secretary, U.S. Department of the Interior ("DOI"); and Damaso

Civil No. 97-2905  
Civil No. 98-2017

2

Serrano ("Serrano") the Mayor of the Municipality of Vieques.[1]

Plaintiffs alleged that the municipal and federal defendants violated federal environmental laws when issuing permits and initiating the construction of a sports complex facility on the Island of Vieques. Plaintiffs' main contentions relied upon the violation of certain "consultation requirements" under the Endangered Species Act ("ESA") as it constituted an "illegal taking" of a listed species.

On August 4, 1998, plaintiffs filed a motion for a preliminary injunction(Docket No. 19), in an effort to (1)enjoin HUD from funding and overseeing the sports complex facility; (2)enjoin the Municipality of Vieques from constructing the facility; and, (3)prevent the transfer of land from DOI to the Municipality of Vieques. On April 30, 2002, the Court denied the motion for preliminary injunction. (Docket No. 50). It appears from the record that the construction came to a halt as a result of this litigation. (See, Docket Nos. 36-38).

On September 24, 2002, after various negotiation efforts

---

[1] Upon plaintiffs' request, the Court consolidated this case (VCHT v. Cuomo) with Civil Case No. 98-2017 (VCHT v. Daley), since both cases involved the effects of the proposed Sport Complex night-lighting upon the reproductive behavior of sea turtles inhabiting in the south-central coast of Vieques. (Docket No. 26).

Civil No. 97-2905  
Civil No. 98-2017

3

plaintiffs entered into a settlement agreement with the municipal defendant (the "municipal agreement"), in which the Municipality of Vieques agreed to, (1)not complete the Sports Complex as designed; (2)comply with the requirements for outdoor lighting in case a future facility is constructed; and (3)continue to maintain the site in full compliance with all applicable federal and state laws, including erosion control methods.(Docket No. 70). The municipal agreement, however, did not settle the attorney's fees and costs, thus, leaving the fee dispute for the Court to resolve (Id. at 4).

Conversely, on March 3, 2003, plaintiffs entered into a settlement agreement with federal defendants (the "federal agreement"), where they agreed on an award of $35,000 as reasonable attorney's fees and costs.  According to the federal agreement, such payment shall be in full and complete satisfaction for any other attorney's fees claims against federal defendants. (Docket No. 76).

On October 8, 2002, plaintiffs filed the motion for attorney's fees and costs. (Docket No. 71). On October 31, 2003, defendants opposed to the motion for attorney's fees, arguing that the award should not proceed on substantive and procedural grounds. (Docket

Civil No. 97-2905                                                  4
Civil No. 98-2017

No. 80).²

## DISCUSSION

A. <u>The Endangered Species Act Fee-Shifting Provision</u>

The penalties and enforcement section of the Endangered Species Act ("ESA") specifies that, courts, "in issuing any final order...may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4) (2003). Despite the apparently broad grant of discretion, the Supreme Court, interpreting identical language in the Clean Air Act, has stated that "some success in the merits [must] be obtained before a party becomes eligible for a fee award." <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 688 (1983).

After the <u>Ruckelshaus</u>, District Courts were left to decide what exactly constitutes "some success in the merits" upon awarding fees. In this context, the First Circuit has found that the meaning of "appropriate" under the "ESA" fee-shifting provision, seemingly requires less than the "prevailing party" standards under

---

²Defendants argued in their opposition that the motion for attorney's fees was filed past the deadline, and therefore should not be considered by this Court. This procedural argument is without merit. The record shows that plaintiffs had until October 11, 2002 to file their motion. (See, Docket No. 70)

Civil No. 97-2905  
Civil No. 98-2017

5

fee-shifting statutes, such as 42 U.S.C. § 1988, while also holding that "some success, even if not major success, may be taken as notable progress, short of full achievement, on any issue of substance." <u>Conservation Law Foundation of New England, Inc. v. Secretary of the Interior</u>, 790 F. 2d 965, 967 (1st Cir. 1986) (internal quotation marks omitted).

Courts often apply a catalyst theory to determine the "success" of the party under "where appropriate" fee-shifting provisions. <u>See</u>, <u>Loggerhead Turtle v. County Council of Volusia County, Florida</u>, 307 F.3d 1318, 1327 (11th Cir. 2002); <u>Southwest Center for Biological Diversity v. Carroll</u>, 182 F.Supp.2d 944, 947 (C.D. Cal. 2001). Under the catalyst theory, plaintiffs prevail if their lawsuits cause defendants voluntarily to alter their behavior to comply with the demands of the plaintiffs' original claim. <u>Stanton v. Southern Berkshire Regional School Dist.</u>, 197 F.3d 574, 577 (1st Cir. 1999); <u>Pearson v. Fair</u>, 980 F. 2d 37, 43-45 (1st Cir. 1992). The First Circuit has expressed that in order to prevail under a catalyst theory a party must show "1)a causal connection between the litigation and the relief obtained, and 2)that the fee-target did not act gratuitously." <u>Kathleen H. v. Massachusetts Dept. of Education</u>, 154 F. 3d 8, 15 (1st Cir. 1998); <u>citing</u>,

Civil No. 97-2905  
Civil No. 98-2017

6

<u>Williams v. Hanover Housing Authority</u>, 113 F. 3d 1294, 1299 (1st Cir. 1997).

In order to establish the causation requirement of the relief requested and the relief ultimately obtained under the catalyst theory, the court must determine 1) what the party sought to accomplish in bringing his lawsuit, and 2) whether the plaintiffs legal efforts had a provocative effect on defendants. <u>Oregon Natural Resource Council v. Turner</u>, 105 F.Supp.2d 1131, 1135-1136 (D. Oregon 2000). Plaintiffs here seek recovery of their attorney's fees under the catalyst theory, arguing that the lighting restrictions obtained through the municipal agreement amounted to a practical victory, and that their lawsuit had been the catalyst for the resulting regulatory restrictions (Docket No. 71).

The municipal defendants contend, however, that the Supreme Court has abolished the catalyst theory, imposing stricter and harsher standards upon awarding attorney's fees. (Docket No. 80). <u>See</u>, <u>Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598 (2001).

In <u>Buckhannon</u>, the Supreme Court settled the circuit court split over the continuing viability of the catalyst theory as a

permissible basis for the award of attorney's fees under the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3613(c)(2), and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205. Id., 532 U.S. at 602. The majority opinion affirmed the Fourth Circuit's rejection of the catalyst theory by defining the term "prevailing party" to include only those parties that obtain either a judgment on the merits or a similar court-ordered change in parties, such as a consent decree. Id. 532 U.S. at 603-604.

In light of the Buckhannon holding, the continuing applicability of the catalyst theory is at best uncertain. The Court looked, however, to federal court interpretations of the Buckhannon effects on other fee-shifting statutes such as the "ESA."

In Center for Biological Diversity v. Norton, the Tenth Circuit, in dicta, noted that the Supreme Court in Buckhannon rejected the catalyst theory in the context of the FHAA and the ADA, which are "prevailing party" statutes. The court distinguished the ESA's "where appropriate" language from the "prevailing party" definition in Buckhannon that excluded the

Civil No. 97-2905
Civil No. 98-2017

8

catalyst theory, 262 F.3d 1077, n. 2 (10th Cir. 2001).³

The Eleventh Circuit has also followed a similar line of analysis in Loggerhead Turtle v. County Council of Volusia County, Florida, 307 F.3d 1318, 1322-1327 (11th Cir.2002), where the court, following the Tenth Circuit, held that "as a matter of law the Supreme Court's decision in Buckhannon does not prohibit the use of the catalyst test as a basis for awarding attorney's fees and costs under the "whenever appropriate" fee-shifting provision of the Endangered Species Act." Id. at 1027. The circuit court, further stated that "there is unambiguous evidence that Congress intended the 'whenever appropriate' provisions to allow fee awards to plaintiffs who do not obtain court-ordered relief but whose suit has a positive catalytic effect. Id. at 1026. (citing, Ruckelshaus, 463 U.S. at 682 n. 1 (1983)).

This Court is persuaded by the Tenth and Eleventh Circuit Courts' reasoning. The catalyst theory should still be applied to plaintiffs who file suit under fee-shifting statutes that grant fees "when appropriate." Therefore, the Court rejects the

---

³The Court structured its analysis under the catalyst theory affirming the district court's denial of an award of fees because the plaintiffs' actions were not causally linked to the subsequent agency action. 262 F.3d at 1081.

Civil No. 97-2905                                                    9
Civil No. 98-2017

municipal defendant's contention that <u>Buckhannon</u> implicitly limits the application of <u>Ruckelshaus</u>.

The record shows that plaintiffs have had "some success on the merits" according to the <u>Ruckelshaus</u> standard. The chronology of events demonstrates that defendants and other agencies first began to appreciate the impact that the proposed Sports Complex would have on sea turtles only after plaintiffs filed suit. Although plaintiffs did not secure a judgment from the court, they did obtain a court-approved settlement which provided not only that construction of the Sport Complex would be terminated, but also that any future construction will comply with the protective standards set out in the biological opinions.

This court finds that plaintiffs have successfully established 1) that there was a causal relationship between the litigation brought and the practical outcomes, and 2) that there was a legal basis for the claim under the "ESA." Accordingly, the Court will grant the plaintiffs' Motion for Attorney's Fees and Costs with some modifications on the amounts requested.

II. <u>The amount of the award</u>

A. <u>Legal standard</u>

Having determined that an award for attorney's fees is

Civil No. 97-2905
Civil No. 98-2017

10

appropriate under the "ESA's" fee-shifting provision, the Court must then determine whether the fees requested are reasonable. American Canoe v. Ass'n v. E.P.A., 138 F.Supp.2d 722,732 (E.D. Va. 2001). In making this determination, courts usually employ the lodestar approach to determine the reasonableness of an attorney's fees award.[4] See, Hesley v. Eckerhart, 461 U.S. 424, 433 (1983). See also, Kristine Cordier Karnezis, Annotation, *Attorney's Fees Under § 11(G)(4) of Endangered Species Act (16 U.S.C. § 1540(G))*, 171 A.L.R. Fed. 419 (2001).

The initial determination of the reasonable lodestar amount is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. Conservation Law Foundation of New England v. Watt, 654 F. Supp. 706, 709 (D. Mass. 1984); see also, Hensely, 461 U.S. at 424. The First Circuit has stated that, "the attorney's contemporaneous billing records constitute the usual starting point but the court by no means is shackled by those records." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001). In sculpting the reasonable hourly rate, the court should take into account the

---

[4]For the purpose of the attorney's fees analysis, the Court will follow "prevailing party" case law under 42 U.S.C. § 1988.

Civil No. 97-2905  
Civil No. 98-2017

11

prevailing rate in the community for comparably qualified attorneys. See, Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984); see also, Lipset v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). Moreover, in Andrade v. Jamestown v. Housing Authority, the Court held that a district court is "entitled to rely upon its own knowledge of attorney's fees in its surrounding area in arriving at a reasonable hourly rate." 82 F.3d 1179, 1190 (1st Cir. 1996).

Furthermore, in Coutin v. Young & Rubicam Puerto Rico, Inc., the First Circuit held that a district court may, segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours and assign more realistic rates to time spent. Consequently, the trial court retains the authority to adjust the lodestar amount after initially computing it. 124 F.3d 331, 337 (1st Cir. 1997).

B. Plaintiff's request

Plaintiffs seek fees and costs in the amount of $261,486.42, which covers work done by Mr. James Dougherty, Mrs. Jane Becker, and expert witness costs for a case which never reached a trial stage. Having reviewed the documents submitted, the Court finds that a reduction of the billable amount is warranted for being excessive or unproductive. See, Hensley, 461 U.S. at 436. A

Civil No. 97-2905
Civil No. 98-2017

12

reduction will follow in the areas discussed below:

*(a) Mr. James Dougherty*

Under the lodestar approach, we must first determine a reasonable rate for valuing the time each attorney spent in this action. Mr. James Dougherty is a very experienced[5] environmental law practitioner with a practice in Washington, D.C. Plaintiffs seek recovery for the time that he spent on this case at hourly rates ranging from $330 to $370. Plaintiffs acknowledge that this rate is higher than the prevailing rates in Puerto Rico, but argue that it was necessary for them to obtain the assistance of counsel with a high degree of expertise in environmental litigation.

Under First Circuit law, there is a presumption that the proper rate to be applied to the work of out-of-town counsel is that of the forum community, rather than that which the attorney charges in the community in which he or she practices. See, Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983). In Maceira, however, the First Circuit established that an out-of-town specialist may be able to command a higher rate for his services if the case requires specialized abilities not amply reflected among local lawyers, or

---

[5] Mr. Dougherty has over 20 years of experience in this area of the law.

Civil No. 97-2905
Civil No. 98-2017

13

"when a specialist was required for the handling of the case and a smaller community does not have one available." Id. See also, Guckenberger v. Boston University, 8 F.Supp.2d 91, 103 (D. Mass. 1998)(not allowing a Maceira exception); Libertad v. Sanchez, 134 F.Supp.2d 218 (D.P.R. 2001) (where the District Court found that a New York attorney was to be compensated at Puerto Rico rates because the Court understood that there were other local counsel that could have litigated the case).

In support of their out-of-town fee request, plaintiffs contend that there is only one other instance of an "ESA" litigation within this district, Water Keeper Alliance v. United States DOD, 152 F.Supp.2d 155 (D.P.R. 2001), and that, in their view, the attorneys in that case were relatively inexperienced. However, this contention by itself is not sufficient to rebut the Maceira presumption.[6]

This Court, in the exercise of its discretion, finds that there is reason to believe that other competent counsel were

---

[6]Water Keeper Alliance v. US DOD, 152 F.Supp.2d 155 (D.P.R. 2001), is a case where the district court denied a preliminary injunction based upon the applicable four-factor standard. Such a decision is based on equitable grounds, thus, "not prevailing" is not necessarily a per se indicator of "inexperience" as Plaintiffs suggest.

Civil No. 97-2905                                                        14
Civil No. 98-2017

readily available at a lower charge or rate. Therefore, there was little or no necessity for plaintiffs to bring an out-of-town counsel for this case, since there are some environmental law practitioners in Puerto Rico with a high degree of expertise in environmental statutes.

The procedural posture of this case reveals that the case could have been equally handled by Mrs. Jane Becker, co-counsel for this case based in Puerto Rico, who also has many years of experience in environmental litigation. Accordingly, this Court will equate Mr. Dougherty's rate with Mrs. Becker's, reducing his Washington, D.C. rate to $225 which is what a partner of a local large law firm would charge for this type of case. See, Libertad v. Sanchez, 134 F.Supp.2d at 235 (D.P.R. 2001)(where the district court reduced the out-of-town specialist rate to a the same as the local co-counsel's).

Furthermore, the Court believes that the amount of time and resources deployed for this case is somewhat excessive. The fact that this case never reached the trial stage and that it was procedurally stagnant for many years, compels the Court to significantly reduce the amount of hours billed by Mr. James Dougherty. Considering that this case was settled without much

Civil No. 97-2905
Civil No. 98-2017

15

opposition from the defendants, and that Plaintiffs settled the consolidated cases with Federal Defendants for $35,000.00, a mere fraction of what they are seeking to recover from the Municipal Defendant, the Court questions the claimed value of the case. Accordingly, the Court will only grant 311 hours at a $225.00 to appropriately and fairly reflect the degree to which the plaintiffs' efforts resulted in the outcome they sought, See, Conservation Law Foundation v. Evans, 2003 WL 1559940 at *3 (D. Mass 2003).[7]

*(b) Mrs. Jane Becker*

In the fee petition, Jane Becker declared that she has eight years of practice in environmental litigation representing both plaintiffs and defendants. Plaintiffs are moving this Court to award Mrs. Becker 93.75 hours at a $200 rate and 19 hours at a $225 rate. The Court has already established that Mrs. Becker's hourly rates are reasonable. After reviewing her statement, however, the Court finds that, most of her work was less demanding in terms of

---

[7] Conservation Law v. Evans, was an action under the Endangered Species Act where the parties had reached a settlement agreement before reaching trial. The district court found that there was a disproportionate deployment of resources ($331,732.16) in relation to the outcome achieved. Accordingly, the court reduced the attorney's fees award to properly reflect the legal efforts with the results obtained.

Civil No. 97-2905
Civil No. 98-2017
16

the legal work product.[8]

Careful consideration of Mrs. Becker's request, and in light of the Court's aforementioned disbelief that the amount sought for attorney's fees is reasonable, moves the Court to reduce Attorney Becker's award to $13,000 to account for the disparity between the plaintiffs legal efforts and the actual result. Id.

(C) *Costs*

After evaluating the costs statements, and in light of the foregoing reasons, this Court deems that a more reasonable amount of costs for both consolidated cases should be $17,000.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** plaintiffs' motion for attorney's fees as modified.

1) James Dougherty           $70,000.00

2) Jane Becker               $13,000.00

3) Costs                     $17,000.00

TOTAL                        $100,000

Minus                        -$35,000.00   (federal   defendant

---

[8] The statement shows that Mrs. Becker spent 23 hours out of the 117.5 she is billing on telephone conference calls that require less demanding efforts than preparing or reviewing legal drafts.

Civil No. 97-2905  
Civil No. 98-2017                                                                 17

                                              settlement payment)

**GRAND TOTAL**                              **$65,000.00**

    The grand total amount shall be satisfied by the **municipal defendants** in the consolidated cases.

    IT IS SO ORDERED.

    San Juan, Puerto Rico, this 30th day of March 2004.

                                                <u>s/ Jay A. Garcia-Gregory</u>  
                                                JAY A. GARCIA GREGORY  
                                                United States District Judge